Submitted June 15, reversed November 14, 1978

STATE ex rel ROTH, *Appellant,*
*v.*
BOOKHART, *Respondent.*
(No. D7612-17386, No. 337-929, CA 10007)
586 P2d 382

James A. Redden, Attorney General, Al J. Laue, Solicitor General, and Jan P. Londahl, Assistant Attorney General, Salem, filed the brief for appellant.

No appearance for respondent.

Before Schwab, Chief Judge, and Johnson, Gillette, and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

The state appeals from an order by the circuit court modifying and reducing a previously ordered wage assignment. At issue is the meaning of ORS 23.777, the wage assignment statute,[1] and the extent of the court's jurisdiction to modify orders entered under that statute. We reverse.

The wage assignment order grew out of a 1969 paternity suit, Case No. 337-929, in which defendant was found to be the father of David John Roth and ordered to pay child support of $41.50 per month until the child reached the age of 18 years. That amount was later reduced to $25 per month.

---

[1] ORS 23.777 provides, in pertinent part:

"(1) In addition to any other remedy provided in law for the enforcement of support, the court, upon notice that support payments or any fees provided for in chapter 458, Oregon Laws 1975, are delinquent and application by the obligee or by the district attorney or Support Enforcement Division of the Department of Justice, shall issue an order directing any employer or trustee, including but not limited to a conservator, of the obligor to withhold and pay over to the Department of Human Resources or the clerk of the court out of which the order is issued, whichever is appropriate, money due or to become due such obligor in an amount not to exceed:

"(a) One-fourth of the disposable earnings as defined in ORS 23.175 due or becoming due the obligor at each pay period, until all delinquent amounts due together with interest are paid in full, plus all further amounts coming due before the delinquent amounts are paid in full.

"(b) Thereafter at each pay period, the amount ordered to be paid for support, but not more than one-fourth of the disposable earnings as defined in ORS 23.175 due or becoming due the obligor at each pay period.

"(2)(a) An order entered pursuant to this section shall recite the amount of all delinquent support amounts due, together with interest, and the amount required to be paid as continuing support.

"(b) Effective January 1, 1976, the Department of Human Resources or the clerk of the court out of which the order is issued, whichever is appropriate, shall notify any employer or trustee upon whom such an order has been served whenever all delinquent support payment and interest have been paid in full, and whenever for any other reason the amount required to be withheld and paid over to the department under the order as to future pay periods is to be reduced. Prior to January 1, 1976, the district attorney or the Support Enforcement Division shall provide such notification.

On October 6, 1977, defendant was delinquent in making payments by the amount of $2,972.26. Upon motion by the State Support Enforcement Division, and pursuant to ORS 23.777, the circuit court ordered defendant's employer, Omark Industries, to withhold 25 percent of defendant's disposable earnings per pay period until the delinquency was paid in full and, thereafter, to withold $25 per month.[2] Pursuant to the wage assignment order Omark Industries withheld $186 a month from defendant's paycheck beginning in October, 1977.

Defendant was also involved in a second court proceeding which bore on the circuit court's reasoning in modifying the wage assignment order. In 1976, defendant and his wife of 16 years filed for dissolution of marriage. In September, 1977, a temporary support order was entered in that case, Case D76-12-17386, in Multnomah County Circuit Court, requiring defendant to pay a total of $50 per month child support.

---

"(c) If the obligor's support obligation is required to be paid monthly and his pay periods are at more frequent intervals, the employer or trustee may at the request of the obligor and with the consent of the department withhold and pay over to the department, after all delinquent amounts together with interest have been paid in full, an equal amount at each pay period cumulatively sufficient to pay the monthly support obligation; otherwise the full amount of the support obligation (but not more than one-fourth, or such larger proportion as the court may have ordered pursuant to subsection (3) of this section, of the disposable earnings coming due) shall be withheld and paid from the obligor's first pay periods each month.

"(3) Subject to the provisions of subsections (1) and (2) of this section, the court may in its discretion order the payment of a percentage or gross amount per pay period which is more than one-fourth of the disposable earnings due or becoming due the obligor at each pay period, if so requested in the application filed under subsection (1) of this section, and after citation and opportunity for hearing being accorded to the obligor and the employe or trustee. Upon application of the obligor, the court out of which the order was issued may provide for a hearing based upon affidavits and exhibits and such testimony as the court may find necessary to determine whether to continue the order of the court as it affects future earnings and future, unaccrued support obligations."

[2]The order was later amended to raise the support obligation to $41.50 a month after the delinquency was paid in full.

Defendant made a partial payment on that obligation in September, 1977, but once the wage assignment order in Case No. 337-929 took effect so that $186 was withheld from his paycheck per month, defendant fell behind on his obligation under the temporary support order.

On November 25, 1977, defendant moved to quash or, in the alternative, to modify the October 6 wage assignment order. A hearing on the motion was held on December 14, 1977, at which defendant, his counsel, and an attorney for the State Support Enforcement Division were present. Also present was a Multnomah County district attorney who indicated he was there to protect the temporary child support order issued in Case D76-12-17386 in September, 1977.

At the hearing, defendant indicated that with the $186 withheld from his monthly salary, he was unable to meet his expenses and his $50 a month child support obligation. The trial judge agreed to reduce the wage assignment order in Case 337-929 to the sum of $41.50 and, upon request by the district attorney, agreed to have an additional $50 withheld by Omark for the child support obligation. The judge's final order reads as follows:

"(1) Effective the 15th day of December, 1977, the current wage assignment with Omark Industries against the defendant shall be reduced to exactly $91.50 per month.

"(2) This $91.50 per month is to be divided between two cases, No. 337-929 and No. D76-12-17386. $41.50 of the monthly $91.50 shall go toward support payments in Case No. 337-929. The remaining $50 of the monthly $91.50 shall go toward support ordered in Case No. D76-12-17386.

"(3) Only $91.50 per month shall be withheld from defendant's paycheck for this wage assignment."

The state appeals from that order and makes two assignments of error:

"1. The trial court erred in dividing the wage assignment between support payments in Case No. 337-929

[ 177 ]

and Case No. D76-12-17386, and in awarding plaintiffs in Case No. D76-12-17386 $50 per month out of the wage assignment in this case because the court lacked jurisdiction.

"2. The trial court erred in reducing the wage assignment with Omark Industries against the defendant to $91.50 per month."

In its appeal, the state assumes that the language in the order, "reducing" the wage assignment to $91.50 is binding as a description of what occurred at the hearing. We think, however, that upon close examination it appears that the judge did not do what the state suggests she did. The record indicates that the judge did not order a reduction in the wage assignment in Case No. 337-929 to $91.50 per month, and then divide *that* sum between the paternity suit delinquency obligations in Case No. 337-929 and the child support payments in Case No. 76-12-17386. What the judge did do is order a reduction in the wage assignment from 25 percent per month to $41.50 per month in Case No. 337-929. The judge then admonished the defendant that in keeping with the court's order reducing the wage assignment on the paternity suit obligation, defendant was expected to keep up his $50 per month child support payments in the other case. The district attorney then suggested that the wage assignment order be entered for $91.50 per month, with $41.50 to go towards the paternity suit arrearage, and $50 for the child support obligation. The judge agreed that that would simplify matters. The following exchange then took place:

"[Defendant's Attorney]: Now, it is my understanding that the wage assignment is not to be increased to $91.50, it is to remain at $41.50—is to be reduced to $41.50 and [defendant] on his good faith is supposed to pay $50.00 a month.

"The Court: Correct. If it will make it easier for him without having to make the payments, [the district attorney] was suggesting that the monies come out of his wages in order to take care of the $50.00 for the other two children. If your client objects, that issue is not

[ 178 ]

before me. I just thought it would make it easier for your client."

We take it from the subsequent entry of the order in question that defendant consented.

■ The state argues that the circuit court lacked jurisdiction to make the $50 wage assignment order in Case No. D76-12-17386 because the plaintiffs in that case were not before the court. Assuming, without deciding, that the state is correct, we do not believe the state has standing to raise that argument. The state was not prejudiced by the circuit court's order; the trial judge had already decided to reduce the wage assignment order to $41.50 in Case No. 337-929. Its determination to include an additional $50 arising out of another case in the wage assignment order does not affect the state's interest in having its wage order protected in this proceeding. *See Multnomah Co. v. Reed et al,* 203 Or 21, 278 P2d 135 (1954).

In its second assignment of error, the state argues that "the trial court erred in reducing the wage assignment with Omark Industries against the defendant to $91.50 per month." Our reading of the record and disposition of the state's first assignment of error makes it clear that the trial court reduced the wage assignment on behalf of the state to $41.50, not $91.50 per month, but the state's contention remains the same. The state argues that

"* * * when an obligor is delinquent in support payments for an amount greater than one-fourth of disposable income and an obligee or the district attorney or the Support Enforcement Division of the Department of Justice makes application for a wage assignment of one-fourth of the obligor's disposable earnings pursuant to ORS 23.777, the court does not have discretion to grant a wage assignment less than the statutory maximum and does not have authority to reduce a wage assignment order obtained pursuant to ORS 23.777, which grants the statutory maximum, to an amount below the statutory maximum."

We agree that the statute does not accord the trial judge any flexibility.

[ 179 ]

■ The statute, ORS 23.777, mandates that the circuit court issue a wage assignment order, once the obligor is found to be delinquent and upon application by the appropriate party. *Roberts and Roberts,* 26 Or App 777, 554 P2d 570 (1976). The assignment order may be issued for an amount "not to exceed" one-fourth of the disposable earnings. We construe this phrase to mean that it is not within the trial judge's discretion to set any amount other than the prescribed statutory maximum.

The provisions of subsection (3) of ORS 23.777 demonstrate that, as presently written, the statute does not grant to trial courts the flexibility assumed by the judge here. That subsection provides,

"* * * * *

"(3) Subject to the provisions of subsections (1) and (2) of [ORS 23.777], the court may in its discretion order the payment of a percentage or gross amount per pay period which is more than one-fourth of the disposable earnings due or becoming due the obligor at each pay period if so requested in the application filed under subsection (1) of this section, and after citation and opportunity for hearing being accorded to the obligor and the employer or trustee. Upon application of the obligor, the court out of which the order was issued may provide for a hearing based upon affidavits and exhibits and such testimony as the court may find necessary to determine whether to continue the order of the court *as it affects future earnings and future, unaccrued support obligations.*" (Emphasis added.)

■ Applying the established doctrine of *inclusio unis est exclusio alternis,* the provision in subsection (3) for a pre-garnishment hearing and for another, post-garnishment hearing in the case of an application for more than 25 percent of an obligor's wages means that in *other* cases, *e.g.,* when the amount to be taken is a flat 25 percent, no hearing—and therefore no modification—is contemplated. This construction is conclusively supported by the language of the last portion of the subsection, emphasized *supra:* Even under the

more stringent circumstances contemplated by subsection (3), a court can order a reduction only as to *future* wages and only as to *unaccrued* support obligations.

It follows that the trial judge's reduction of an obligation arising out of an *accrued, delinquent* support obligation in this case was contrary to statute.

Reversed.